**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MICHAEL BELGRAVE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-1704 |
| | § | |
| SPLENDORA INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court in this employment discrimination case is a Motion for Summary Judgment [Doc. # 28] filed by Defendant Splendora Independent School District ("SISD"). Plaintiff Michael Belgrave, proceeding *pro se*, has responded [Doc. # 29][1] and SISD has replied [Doc. # 30]. Upon review of the parties' submissions, all

[1] Although the Court is mindful of the challenges facing a *pro se* plaintiff, such parties are still expected to abide by all procedural and substantive law. *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975); *Birl v. Estelle*, 660 F.2d 592, 592 (5th Cir. 1981); *see also Rolen v. City of Brownsfield*, 182 F. App'x 362, 365 (5th Cir. 2006) ("[E]ven *pro se* litigants must comply with the Federal Rules of Civil Procedure and present proper summary judgment evidence."). Belgrave's Response to SISD's Motion for Summary Judgment ("Response") [Doc. # 29] is, at best, difficult to follow. It consists of several pages of alleged, but largely unsubstantiated, "admissions" by SISD, followed by Belgrave's explanation of his dispute with his former employer wherein he primarily accuses SISD of engaging in subterfuge to prevent the Court from learning "the truth." Belgrave's response is bereft of citation to legal authority and he includes no affidavit or other sworn testimony to support the many factual assertions he makes in the body of his Response. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("[U]nsubstantiated assertions are not competent summary judgment evidence."). Although he has attached twenty-two pages of documents to his (continued...)

pertinent matters of record, and applicable legal authorities, the Court concludes that Defendant's Motion should be **granted**.

## I. FACTUAL BACKGROUND

In August 2006, after being interviewed in person by Principal Will Gollihar and Assistant Principals Pat Armstrong, Cecilia Williams, and Charlotte Wiggins, Plaintiff Michael Belgrave was hired by Defendant Splendora Independent School District ("SISD") as an at-will Student Assignment Center ("SAC") Aide at Splendora Junior High School at an annual salary of $14,114.[2] Belgrave was hired to replace the former SAC Aide, a female SISD employee who had taken a new position in the school's library. As a SAC Aide, Belgrave was responsible for overseeing the SAC classroom, an on-campus disciplinary placement for students who have engaged in minor disciplinary infractions. Students are typically assigned to the SAC classroom for a few days and are expected to complete their classwork as assigned by their regular teachers. Belgrave was hired to supervise the students, maintain discipline, and keep the students on task.

---

1 (...continued) submission, none are referenced in his response and the relevance of most of the documents is unclear. Indeed, several documents appear to directly contradict Belgrave's claims.

2 Belgrave states that he was told during his interview that his annual salary would be $14,871, and that while he accepted the lower salary, he has never been given a satisfactory explanation for this discrepancy.

As a new employee, Belgrave admits he was informed of SISD policies, including policies and procedures to be followed if he needed to miss a day of work. Pursuant to SISD policy, if an employee was going to be absent from work, he was to contact his school's registrar by 9:00 p.m. the night before, or between 6:00 a.m. and 6:30 a.m. the day of, the absence, so that the school could arrange for a substitute.

Almost immediately, Belgrave struggled in his new position. Students were often confrontational and challenged his authority. Twice, students directed racial epithets towards Belgrave, who is African-American. Although Belgrave complains that he was given little training or direction, SISD asserts that it was responsive and supportive, even as school administrators became increasingly concerned over Belgrave's ability to manage the SAC class. On September 13, 2006, as a result of these concerns, Gollihar and the assistant principals met with Belgrave to discuss issues they had with Belgrave's performance and to give him directives for improvement. This meeting was memorialized by a written reprimand, signed by Gollihar and Belgrave. By signing, Belgrave acknowledged that his signature "[did] not necessarily indicate that [he] agree[d] with [the] contents" of the document and that he "underst[ood] that [he had] the right to respond within ten working days" if he disagreed with them.[3] Belgrave did not respond. One week later, Belgrave was again

---

[3] *See* Complaint [Doc. # 1], at 18–19 (Belgrave's Complaint includes dozens of pages (continued...)

issued a written reprimand after school administrators discovered SAC students sleeping while under Belgrave's supervision, a violation of SISD rules.[4] Although Belgrave now disputes SISD's version of events, he did not submit a response to the written reprimand, despite his acknowledgment of his right to do so.

A few days later, Belgrave discovered a racially charged note taped to the door of his classroom.[5] At the end of the school day, he turned the note over to school administrators who concluded that the note was more likely an attempt to intimidate Belgrave than a serious threat against him. Nonetheless, SISD claims it took the matter seriously, reported it to campus police, and began taking steps to procure

---

3 (...continued)
of exhibits that are not separately numbered or paginated. For ease of reference, the Court refers to all documents attached to the complaint by the page numbers assigned by the Court's electronic docketing system.); *see also* Defendant's Motion for Summary Judgment [Doc. # 28], Exh. A-4.

4 *See* Complaint [Doc. # 1] at 24; *see also* Defendant's Motion for Summary Judgment [Doc. # 28], Exh. A-5.

5 The note states:

> Die you f***ing niger [sic] or I will kill you. Die niger [sic] Die niger [sic] Die niger [sic] . . . On top of the scool [sic] all cover [sic] in blod [sic] I shot that pore [sic] niger with a forefore [sic] sulg [sic]. I went to his grave ever [sic] body throu [sic] out flowers I throw out a grnady [sic].

Complaint [Doc. # 1], at 52; *see also* Defendant's Motion for Summary Judgment [Doc. # 28], Exh. E.

security cameras for Belgrave's classroom.[6] Around that time, Belgrave apparently contacted the Equal Employment Opportunity Commission ("EEOC") by fax to obtain information on race discrimination and harassment. The EEOC responded with a letter explaining the legal definitions of discrimination and harassment and advising Belgrave of his right to file a complaint if he suspected that he had been subjected to unlawful discrimination.[7]

Shortly after Belgrave discovered the note on his classroom door, he suffered a back injury after which his attendance at work became sporadic. By his own admission, he missed seven days of work over a two week period. Although Belgrave asserts that he always followed call-in procedures, SISD claims that on October 2, 2006, Belgrave failed to notify the school that he would be absent from work until 8:15 a.m. that morning. Belgrave received a written reprimand regarding the incident.[8] As with his two prior reprimands, Belgrave acknowledged his right to submit a response, but declined to do so. On October 17, 2006, SISD claims that

---

6 *See* Defendant's Motion for Summary Judgment [Doc. # 28], Exh. A: "Declaration of Will Gollihar," ¶ 3; Exh. A-1 (detailing SISD's response to the letter); *see also* Complaint [Doc. # 1], at 25. Cameras were installed approximately one month later.

7 *See* Complaint [Doc. # 1], at 28–29.

8 *Id.* at 26; *see also* Defendant's Motion for Summary Judgment [Doc. # 28], Exh. A-2.

Belgrave again failed to follow call-in procedures.[9] As a result of this incident, Belgrave's employment was terminated.

Approximately one week after his termination, and pursuant to SISD policy, SISD claims that Belgrave was informed by the school secretary that his final paycheck and some incidental items—a certificate from a training he attended and some coffee he purchased through a student fundraiser —would be held by the school until Belgrave returned his keys and any other SISD property in his possession. Belgrave also needed to sign his final timesheet so that his final check could be processed. Belgrave disputes that he was told this, though he does acknowledge that he received a letter from Principal Gollihar several months later asking him to return the school's property and sign his final timesheet so that his final paycheck could be released.[10] A month later, Belgrave responded, accusing SISD of withholding his pay in retaliation for his EEOC complaint.[11] In May 2007, notwithstanding Belgrave's refusal to return his keys to the school, SISD sent Belgrave his final check and other

---

9 Complaint [Doc. # 1], at 27; *see also* Defendant's Motion for Summary Judgment [Doc. # 28], Exh. A-3.

10 *See* Defendant's Motion for Summary Judgment [Doc. # 28], Exh. L.

11 *See id.*, Exh. M. According to Belgrave, after receiving the letter from Gollihar requesting that Belgrave return his keys, he decided that he "should[n't] take the keys back . . . [b]ecause [he] didn't want any dealings with them [SISD] any longer . . . [and he] wasn't going to spend any money on gas to drive to them. If it was 2 miles away, [he] wasn't going." *Id.*, Exh. B: "Belgrave Deposition Transcript," at 108.

property.[12]

Shortly after he was terminated, Belgrave formally sought redress from the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWC"), alleging that SISD created a hostile work environment and discriminated against him on the basis of his race. The EEOC and the TWC declined to pursue his claims and Belgrave was issued a "right to sue" letter.[13] This lawsuit followed. Belgrave also sought unemployment benefits from the TWC, which ultimately determined that Belgrave was eligible for benefits.[14]

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial. *Celotex Corp. v. Catrett*,

---

[12] *See id.*, Exh. D-2.

[13] *See* Complaint [Doc. # 1], at 32–34, 38–39.

[14] *See id.* at 47. Belgrave suggests that the TWC's decision to award him benefits is evidence of SISD's alleged discriminatory treatment of him. However, "[a] finding of fact, conclusion of law, judgment, or final order" of the TWC may not be used as evidence in a lawsuit (except in suits to enforce payment of unemployment benefits). TEX. LAB. CODE § 213.007. Thus, the Court cannot consider this as proper summary judgment evidence. *See Williams v. Aviall Servs., Inc.*, 76 F. App'x 534, 536 (5th Cir. 2003) ("Under Texas law, the Texas Workforce Commission's findings and conclusions may not be used as evidence in lawsuits.").

477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the non-moving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak*, 953 F.2d at 913). However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th

Cir. 1998). Instead, the non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

## III. <u>ANALYSIS</u>

Belgrave claims broadly that SISD subjected him to "workplace hostility, race discrimination, wage and employment discrimination, [and] . . . retaliation."[15] He alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE § 21.001 *et seq.*, and the Equal Pay Act, 29 U.S.C. § 206 *et seq.* The Court

15 Complaint [Doc. # 1], at 1.

addresses each of these claims in turn, starting with his "race discrimination" claims.

### A. Race Discrimination Claims

Belgrave's Complaint, broadly construed, raises several theories of relief cognizable under Title VII and the TCHRA.[16] Belgrave alleges that he was the victim of disparate treatment, in that his termination was racially motivated. He also alleges he was terminated in retaliation for complaining about SISD's response to the racially charged note discovered on Belgrave's classroom door. Finally, he complains that he was subjected to a hostile work environment. For the reasons set forth below, the Court concludes that Belgrave has failed to establish a *prima facie* case of race discrimination under any of these theories.

#### 1. Disparate Treatment – Wrongful Termination

In order to overcome SISD's motion for summary judgment, Belgrave must raise a genuine issue of material fact whether SISD discriminated against him on the

---

[16] Belgrave has asserted identical claims cognizable under two statutory provisions, the federal Civil Rights Act and the state TCHRA. "The TCHRA is modeled after federal civil rights law" and "purports to correlate 'state law with federal law in the area of discrimination in employment.'" *Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 925 (S.D. Tex. 2002) (citing *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999)); *Rodriguez v. ConAgra Grocery Prods. Co.* 436 F.3d 468, 473–74 (5th Cir. 2006). Thus courts must look to the "analogous federal precedent"—in this case, Title VII—when interpreting the TCHRA. *NME Hosps. Inc.*, 994 S.W.2d at 144; *see also Holt v. Lone Star Gas. Co.*, 921 S.W.2d 301, 304 (Tex. App.—Ft. Worth 1996, no writ). The parties have identified no distinctions between Title VII and the TCHRA relevant to Belgrave's claims. Therefore, the Court will employ a single analysis under Title VII in evaluating Belgrave's discrimination claims. This analysis applies with equal force to his TCHRA claims.

basis of his race. *See* FED. R. CIV. P. 56(c). Unlawful discrimination under Title VII can be established through either direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (citing *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1999)). As Belgrave sets forth no direct evidence of disparate treatment, his claim is analyzed using the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001). Under this test, a plaintiff must initially establish a *prima facie* case of race discrimination, which raises a presumption of discrimination. *Id.*; *see also Rutherford v. Harris County*, 197 F.3d 173, 179–80 (5th Cir. 1999). If successful, the burden then shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for its actions. *Okoye*, 245 F.3d at 512. The burden on the defendant at this stage "'is one of production, not persuasion . . . [and] can involve no credibility assessment.'" *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000)). If the defendant sustains its burden, "the presumption of discrimination dissipates." *Wallace*, 271 F.3d at 220 (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). The burden then "shifts back to the plaintiff to establish: (1) that the employer's proffered reason is not true[,] but is instead a pretext for discrimination; or (2) that the employer's reason,

while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). "The plaintiff bears the ultimate burden of persuading the trier of fact . . . that the employer intentionally discriminated against [him] because of [his] protected status. *Wallace*, 271 F.3d at 220 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511–12 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To establish a *prima facie* case of race discrimination, Belgrave must show "that he: (1) is a member of a protected class, (2) was qualified for [his] position, (3) was subject to an adverse employment action, and (4) . . . 'that others similarly situated [but outside the protected class] were treated more favorably.'" *Okoye*, 245 F.3d at 512–13 (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)); *see also Alvarado*, 492 F.3d at 611. Alternatively, in a work rule-violation case, such as this, "a Title VII plaintiff may establish a *prima facie* case [of discrimination] by showing 'either that he did not violate the rule or that, if he did, [employees outside his protected class] who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1986, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)). Belgrave has failed to establish his case under either approach.

Applying the four-pronged test for establishing a *prima facie* case of race discrimination, the parties do not dispute that Belgrave, an African-American, is a member of a protected class, and thus satisfies the first prong of the analysis. The parties also do not contest that Belgrave suffered an adverse employment action, as required under the third prong, when he was terminated.[17] *See, e.g., DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007) (termination qualifies as an adverse employment action).

As to the second prong, SISD argues, without citation to any authority, that Belgrave "cannot show that he was qualified for his position when he failed to show

---

[17] Belgrave cites a litany of complaints about his time with SISD. For example, he complains that he was given insufficient training and support and that his predecessor was provided a "student aid" during one period of the school day, was allowed more contact with parents than he was, and received longer breaks than he did. However, in his discrimination charges to the EEOC and TWC, as well as in his response to SISD's motion for summary judgment, Belgrave's focus is on the fact of his termination. To the extent Belgrave is complaining of other adverse employment actions, the Court notes that in a Title VII case, an adverse employment action must be an "'ultimate employment decision . . . such as hiring, granting leave, discharging, promoting, and compensating." *Brazoria County v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004) (quoting *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995)); *see also Stanley v. Univ. of Tex. Med. Branch*, 425 F. Supp. 2d 816, 824 (S.D. Tex. 2003) ("[N]ot receiving equal restroom breaks . . . does not rise to the level of an actionable Title VII claim."). Notwithstanding his failure to offer any evidence to substantiate his claims, none of Belgrave's other complaints rise to the level of an actionably employment action. "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 535 (S.D. Tex. 1999) (citing *Greaser v. Mo. Dep't. of Corr.*, 145 F.3d 979, 984 (8th Cir. 1988)). Thus, the only action by SISD that is pertinent to Belgrave's disparate treatment claim is its decision to terminate Belgrave.

up for school on time and failed to call in for a substitute."[18] The Court is unpersuaded that that an employee becomes "unqualified" for his position merely by engaging in work-rule violations. SISD admits that Belgrave was chosen from a group of applicants for the SAC Aide position because he was deemed the best person for the job.[19] On the other hand, evidence in the record demonstrates that Belgrave struggled in his position, suggesting that he may have lacked adequate skills to perform as expected. There is a question of fact whether Belgrave was qualified to be a SAC Aide. Nevertheless, the Court will assume, for summary judgment purposes, that Belgrave satisfies this element and turns to the fourth prong of the *prima facie* analysis.

To establish the fourth element of a *prima facie* case of race discrimination under Title VII, a plaintiff may present "circumstantial evidence that [he] has been treated differently than similarly situated non-members of the protected class." *Williams v. Trader Pub. Co.*, 218 F.3d 481, 484 (5th Cir. 2000) (citing *Polanco v. City of Austin*, 78 F.3d 968, 977 (5th Cir. 1996)). To satisfy the "similarly situated" requirement, the circumstances of the plaintiff and the non-protected class member

---

18 Defendant's Motion for Summary Judgment [Doc. # 28], at 9.

19 *See id.*, Exh. A: "Declaration of Will Gollihar," ¶ 2 ("When we hired Mr. Belgrave, we have other applicants (of different races) who we could have hired. However, I made the decision to hire him because I thought he was the best person for the job.").

must be more than similar, they must be "nearly identical." *Perez v. Tex. Dept. of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004). Thus, Belgrave must demonstrate "'that the misconduct for which [he] was discharged was nearly identical to that engaged in by a [Caucasian] employee whom the company retained.'" *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982)). Moreover, the "alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decision[]," *Perez*, 395 F.3d at 209, and the comparator employees' position in organization—*e.g.*, job title, duties, supervisor—should be roughly the same. *See, e.g.*, *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2007); *see also Ramirez v. Gonzales*, 225 F. App'x 203, 207–08 (5th Cir. 2005); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991).

Belgrave has pointed to only one individual as a possible comparator employee, Karron Kimmons Kroeger, the school's former SAC Aide. However, while Belgrave argues that she was treated more favorably then he was by SISD, he also states that she "separated" from SISD during the pendency of this lawsuit. Though he offers no evidence or explanation of the circumstances surrounding Kroeger's separation from SISD, to the extent Belgrave is claiming that Kroeger was also fired for misconduct,

she would not have received more favorable treatment than he did and, hence, would not qualify as a proper comparator employee. Regardless, Belgrave also offers no evidence concerning any misconduct by Kroeger, much less evidence that she engaged in similar misconduct as he.[20] This lack of proof is fatal to his claim. *See, e.g.*, *Preston v. Tex. Dep't of Family & Protective Servs*, 222 F. App'x 353, 358–59 (5th Cir. 2007) (sustaining summary judgment for the defendant-employer because the plaintiff "fail[ed] to present any evidence that [other] employees engaged in 'nearly identical' misconduct for which she was terminated" and because the plaintiff

---

[20] As to this element of his *prima facie* case, Belgrave's entire argument is:

> 4. The person who gets the benefit you didn't get, must not be a member of your protected class.
>
> a. Defense admits Karron Kimmons Kroeger was Belgrave's mentor.
>
> b. Defense admits Karron Kimmons Kroeger was assigned a monitor (student-aid) the sixth period of each day.
>
> c. Defense admits Karron Kimmons Kroeger separated from the District during Discovery.
>
> d. Defense admits Karron Kimmons Kroeger was allowed to send letters directly to parents as Belgrave was not.
>
> e. Defense admits Karron Kimmons Kroeger is not part of Belgrave's protected class.

Plaintiff's Response [Doc. # 29], at 1–2. (Belgrave's response is not separately paginated. All page citations are to the page numbers assigned by the Court's electronic docketing system.)

admitted to having no personal knowledge about the circumstances surrounding the putative comparator employee's alleged wrongdoing); *see also Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ("[T]he nonmovant cannot satisfy [his] burden [on summary judgment] with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.").[21] Thus, Belgrave has failed to establish, under the four-prong analysis, a *prima facie* case of disparate treatment race discrimination.

Belgrave has also failed to establish a *prima facie* case under the "work rule violation" analysis. Belgrave states in his unsworn complaint that he followed SISD call-in procedures on October 2, 2006, and October 17, 2006. However, he inexplicably makes no such statement in his response to SISD's motion for summary judgment. Even if the Court were to assume that Belgrave intended the assertions in

---

[21] Moreover, notwithstanding the failure to Belgrave to provide evidence of Kroeger's conduct, Belgrave has also failed to establish that she had a similar disciplinary record as he, which, given Belgrave's history of disciplinary reprimands, is relevant to determining the existence of a viable comparator employee. *See, e.g.*, *Mayberry*, 55 F.3d at 1090 (finding that the lack of evidence that the putative comparative employees had similar disciplinary records as the plaintiff was relevant to determining whether they were "similarly situated"); *Nieto v. L&H Packing Co.*, 108 F.3d 621, 623 (5th Cir. 1997) (finding that the plaintiff was not similarly situated to the putative comparator employees because the plaintiff had a prior disciplinary record); *see also Bryan v. Chertoff*, 217 F. App'x 289, 292 (5th Cir. 2007) (noting that the plaintiff failed to "point[] to any individuals who were similarly situated, *i.e.*, had the same disciplinary records as [the plaintiff]"); *Edwards v. Grand Casinos of Miss.*, 145 F. App'x 946, 948 (5th Cir. 2005) (finding that plaintiff was not similarly situated to the putative comparator employee because, *inter alia*, plaintiff had a more serious disciplinary record than the comparator).

his complaint to be incorporated into his summary judgment response, he has offered no evidence—not even his own affidavit or other testimony—to support his argument that he abided by SISD's call-in procedures. *See Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) ("Although *pro se* litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, we have never allowed such litigants to oppose summary judgments by the use of unsworn materials."); *see also Allen v. Tex. DOT*, 186 F. App'x 501, 503 (5th Cir. 2006); *Thunderhorse v. Pierce*, 418 F. Supp. 2d 875, 885 (E.D. Tex. 2006) ("[A]n opposing party cannot establish a genuine issue of material fact by resting on mere allegations in the [unsworn] pleadings."). Conversely, SISD has offered sworn testimony from Principal Gollihar, explaining how he investigated the matter and why he concluded that it was more likely the case that Belgrave failed to properly call in.[22] Belgrave

---

[22] Gollihar states:

> With regards to the two days that Mr. Belgrave failed to call in and notify [the school registrar,] Angie Kimmons[,] that he would not be at school . . . , I am aware that Mr. Belgrave claims that he did call [the registrar] those days, and that she failed to report his calls to me. However, I discussed the issue with Ms. Kimmons both times, and she maintained that Mr. Belgrave did not timely call in. I know of no reason for Ms. Kimmons to lie, whereas Mr. Belgrave had a motive to lie, *i.e.*[,] to protect his job. I therefore decided to believe Ms. Kimmons over Mr. Belgrave. None of this had anything to do with Mr. Belgrave's race, but with the fact that by being absent and not arranging for a substitute, Mr. Belgrave left the SAC room unsupervised . . . .

(continued...)

thus has failed to demonstrate the existence of any questions of genuine or material fact whether he has met his burden of establishing a *prima facie* case of race discrimination and SISD is entitled to summary judgment on the work rule violation theory.

Even if Belgrave were deemed to have successfully established his *prima facie* case, either under the four-pronged analysis or the work rule violation analysis, he has not adequately responded to the SISD's "legitimate, non-discriminatory reason for its decision to terminate" him, *Rachid*, 376 F.3d at 312, namely, that SISD had a reasonable, good faith belief that Belgrave failed to abide by the school's call-in procedures. *See Corley v. Jackson Police Dep't*, 639 F.2d 1296, 1298 (5th Cir. 1981) ("[A] mistaken but good-faith belief that an employee has violated the employer's rule is sufficient to rebut the *McDonnell Douglas* inference that the employee was discharged for impermissible reasons."); *see Mayberry*, 55 F.3d at 1090–91 (violations of an employer's "Code of Conduct" legitimate grounds for termination); *see also Davis v. Moore Wallace, Inc.*, 217 F. App'x 313 (5th Cir. 2007), *aff'g* No. 9:05-CV-57, 2006 U.S. Dist. LEXIS 15652 (E.D. Tex. March 15, 2006) (failure to abide by employer's attendance policy legitimate grounds for plaintiff's termination);

---

22 (...continued)
Defendant's Motion for Summary Judgment [Doc. # 28], Exh. A: "Declaration of Will Gollihar," ¶ 4.

*Mascorro v. Am. Funds Serv. Co.*, No. SA-05-CA-590-FB, 2006 U.S. Dist. LEXIS 94024 (W.D. Tex. Nov. 20, 2006) (same); *Jordon v. Tex. Dep't of Aging & Disabilities Servs.*, No. 9:05CV161, 2006 U.S. Dist. LEXIS 43895 (E.D. Tex. June 28, 2006) (same); *Thomas v. Willis G's Post Oak, Inc.*, No. H-04-4479, 2006 U.S. Dist. LEXIS 29906 (S.D. Tex. April 25, 2006) (same).

Although Belgrave suggests that SISD is "lying" when it states that Belgrave failed to abide by the school's call-in procedures, the burden on SISD at this stage is merely one of production. *See Ross*, 252 F.3d at 379 ("Defendant's burden . . . is one of production, not persuasion . . . .") (internal quotation and citation omitted)). SISD has met that burden. Belgrave, therefore, must show that a question of fact exists whether SISD's proffered justification is mere pretext for an unlawful discriminatory motive. *See Rachid*, 376 F.3d at 312; *see also Mayberry*, 55 F.3d at 1091 ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

A plaintiff can establish pretext by demonstrating that an employer's explanation for its actions are "unworthy of credence." *Blow v. City of San Antonio*, 236 F.3d 293, 297 (5th Cir. 2001). In such cases, the plaintiff need not introduce additional evidence of discrimination from that offered to establish his *prima facie* case. *See Reeves*, 530 U.S. at 146. In this case, as explained below, SISD's proffered

reason for its decision to terminate Belgrave is rational and supported by evidence. Belgrave, therefore, bears a heavy burden to raise a question of fact whether SISD was actually motivated by unlawful discriminatory animus.

The summary judgment record shows that SISD undertook an investigation of Belgrave's alleged misconduct—his failure to follow SISD's call-in procedures—before concluding that he had engaged in conduct warranting dismissal. Belgrave was given an opportunity to submit a rebuttal, but declined to do so. Belgrave offers no evidence that SISD's investigation or conclusions were motivated by, or in any way influenced by, discriminatory animus. *See Laxton v. Gap, Inc.*, 333 F.3d 572, 579 (5th Cir. 2003) ("To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. The plaintiff must rebut each nondiscriminatory reason articulated by the employer.") (internal citations omitted)). Indeed, Belgrave offers no explanation why Gollihar, who had hired Belgrave less than two months prior to Belgrave's termination—with full knowledge of Belgrave's race—would immediately undertake a campaign to fire him on account of his race. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) ("[C]laims that employer animus exists in termination but not in hiring seems irrational. From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes . . . , only to fire them once

they are on the job." (internal quotations ommitted)). Although Belgrave may believe that his termination was motivated by discriminatory animus, "a subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief." *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983); *see also Little*, 924 F.2d at 96 (5th Cir. 1991) ("A[] . . . plaintiff's own good faith belief that his [protected characteristic] motivated his employer's action is of little value."). Belgrave has presented no evidence to raise a question of fact on this issue.[23]

Belgrave has failed to establish a *prima facie* case of race discrimination.

---

[23] In explaining why he believed his termination was racially motivated, Belgrave stated: "Because it's a known thing that minorities are always looked upon as being lazy and late and not up to their jobs. That's a stereotype that's always on our back." Defendant's Motion for Summary Judgment [Doc. # 28], Exh. B: "Belgrave Deposition Transcript," at 33–34. Belgrave similarly deemed offensive a request by school administrators that he correct a misspelled word in a document that he was to hand out to his students everyday. According to Belgave, the request was racially motivated "[b]ecause of the stereotypes [that African-Americans] are illiterate. We can't spell. We can't write proper English." *Id.* at 57. Belgrave also inferred that racial animus was behind SISD's decision to terminate him because, in response to the incident with the racially-charged note, Gollihar stated to Belgrave that there are some "rednecks" on the campus who might be trying to intimidate Belgrave. *Id.* at 34. Belgrave also took offense to Gollihar's statement during Belgrave's exit interview that "[i]t just didn't work out here." *Id.* at 35. According to Belgrave, Gollihar "said he's met so many teachers in his career . . . and I'm not one of those persons he considers not able to teach. So, what do you mean by just not here? Is it a racial environment that I can't perform here?" *Id.* However, when asked whether he queried Gollihar about this, Belgrave stated that he did not and that he instead "took it to mean because of my skin color why I can't progress here." *Id.* These statements, illustrating Belgrave's unsubstantiated assumptions, are insufficient to establish that SISD's actions were racially motivated and that their stated reason for terminating his employment—that he failed to follow call-in procedures—was pretextual.

Moreover, assuming *arguendo* that he had succeeded in establishing a his case, Belgrave has provided insufficient evidence to raise a question of fact whether SISD's stated, lawful reasons for terminating him were pretext for unlawful discrimination. Thus, SISD is entitled to summary judgment on Thomas's disparate treatment claims under Title VII and the TCHRA.

**2. Retaliatory Discharge**

Belgrave's claim that SISD terminated him in retaliation for his involvement in some protected activity also fails. Title VII retaliation claims are governed by the same *McDonnell Douglas* burden-shifting test applied to Belgrave's disparate treatment claim. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). "Under that framework, the employee's ultimate burden is to prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose." *Id.* However, the employee must first demonstrate a *prima facie* case of retaliation. *Id.* at 607. "To establish a *prima facie* case of retaliation, an employee must demonstrate that (1) he engaged in an activity that Title VII protects; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Lemaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007) (citing *Harvill v. Westward Commc'ns, LLC.*, 433 F.3d 428, 439 (5th Cir. 2005)).

"Under Title VII, an employee has engaged in protected activity if [he] has (1) 'opposed any practice made an unlawful employment practice [Title VII],' or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427–428 (5th Cir. 2000) (citing 42 U.S.C. § 2000e-3(a)). Broadly, "Title VII protects against discrimination on the basis of 'race, color, religion, sex, or national origin.'" *Smith v. City of Jackson*, 351 F.3d 183, 188 (5th Cir. 2003) (quoting 42 U.S.C. §§ 20002e-2(a)(1)–(2)). Thus, protected activities under Title VII require that an employee express opposition to activity that the employee reasonably believes is discriminatory. *See Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).

Belgrave appears to assert that his inquiry to the EEOC following his discovery of the racially-charged note on his classroom door constitutes involvement in a protected activity under Title VII. However, Belgrave has not provided a copy of his letter to the EEOC and does not otherwise demonstrate whether the substance of that inquiry can fairly be deemed evidence of his opposition to an unlawful employment practice. Moreover, assuming *arguendo* that Belgrave informally complained to the EEOC that he believed he was being discriminated against, he has failed to offer any evidence that SISD was aware of this communication with the EEOC. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an

employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

SISD has presented uncontroverted testimony from Principal Gollihar and SISD's Assistant Superintendent of Human Resources, Janet Thompson, stating that neither were aware of any contact between Belgrave and the EEOC prior to his termination.[24] Belgrave admits that he didn't inform anyone at SISD that he had sought counsel from the EEOC and he admits that nobody at SISD suggested to him that they were aware of his communications with the agency.[25] He states only his unsubstantiated belief that, even though he didn't file a formal charge with the agency until after his discharge, the EEOC must have had contact with SISD prior to his termination.[26] This speculation is insufficient to establish a question of genuine and material fact whether there is a causal connection between Belgrave's involvement in a protected activity and SISD's decision to terminate him. Thus, Belgrave has failed to establish a *prima facie* case of retaliatory discharge.

---

24 *See id.*, Exh. A: "Declaration of Will Gollihar," ¶ 6; Exh. D: "Declaration of Dr. Janet Thompson," ¶ 5.

25 *See id.* at 117, 119.

26 *Id.* at 117. Belgrave references a September 29, 2006, statement allegedly prepared by SISD for the EEOC. *See* Defendant's Response [Doc. # 29], at 3. However, he doesn't cite to any evidence and the record reveals no such statement.

In addition, even if Belgrave had met his burden of establishing a *prima facie* case, for the same reasons as those set forth above regarding his disparate treatment claim, Belgrave has not raised a genuine issue of material fact whether SISD's proffered reason for terminating him—his failure to abide by SISD's call-in procedures —is pretextual. Accordingly, SISD is entitled to summary judgment on this theory of Belgrave's claim.

Alternatively, Belgrave complains that his final paycheck was withheld by SISD as retaliation for his filing a charge with the EEOC and TWC. Filing a charge of discrimination qualifies as participation in a protected activity and satisfies the first prong of the *prima facie* test for unlawful retaliation. In addition, deprivation of earned compensation constitutes an adverse employment action under the second prong of the analysis. *Pryor v. Wolfe*, 196 F. App'x 260, 263 (5th Cir. 2006). Belgrave, however, has offered no evidence and only limited argument as to the third prong—the existence of a causal relationship between the protected activity and the adverse employment action. Belgrave appears to focus solely on the temporal relationship between his filing a charge with the EEOC and SISD's decision to hold his paycheck. "Close timing between an employee's protected activity and the adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. GSA*, 110 F.3d 1180, 1188 (5th Cir.

1997). Belgrave has not shown that anyone at SISD was aware that he had filed a charge of discrimination at the time the school secretary initially contacted him regarding his final paycheck. Nonetheless, it is clear from the record that SISD became aware of Belgrave's charge while his final paycheck was still being held by the school,[27] during which time school administrators also became aware of Belgrave's lawsuit and were preparing statements in response.[28] The burden on Belgrave to establish this element of his *prima facie* case is far less stringent than the "but for" standard applicable to establishing pretext. *Long*, 88 F.3d at 305. Thus, the Court is satisfied that Belgrave has at least demonstrated the existence of a question of fact regarding the causal link element.

However, even if the Court were to find that Belgrave has established a *prima facie* case of retaliation on this theory, he has failed to raise any genuine question of material fact whether SISD's stated non-discriminatory reason for its decision to withhold his check— that SISD policy requires that former employees return all school property prior to receiving their final paycheck—is pretext for unlawful discrimination. In order to prevail, Belgrave must show that his check would not have

---

27 *See* Defendant's Motion for Summary Judgment [Doc. # 28], Exh. A: "Declaration of Will Gollihar," ¶ 6; Exh. A-6: "Personal Response of Will Gollihar," ¶ 8.

28 *See, e.g., id.*, Exh. A: "Declaration of Will Gollihar," ¶ 7; Exh. A-6: "Personal Response of Will Gollihar."

been withheld "but for" his involvement in a protected activity. *See Strong v. Univ. Health Care Sys., L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007). Belgrave has offered no additional evidence or argument on this issue and appears to rely on the same temporal relationship he relies on to establish his *prima facie* case. This theory is unavailing. "[T]emporal proximity standing alone is insufficient to establish an issue of fact as to pretext after an employee has provided a non-retaliatory reason" for its employment decision. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008) (citing *Strong v. Univ. Heathcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007)). In addition, to the extent Belgrave may be able to demonstrate that SISD eventually knew of his EEOC claim, it is clear that SISD, prior to Belgrave filing his charge, invoked its long-standing policy regarding the withholding of final paychecks. Accordingly, Belgrave's retaliation claim fails as a matter of law; SISD is entitled to summary judgment on this theory of retaliatory discharge.

**3. Hostile Work Environment**

Next, Belgrave claims that SISD created a hostile work environment in violation of Title VII and the TCHRA. "A *prima facie* case of racial harassment alleging hostile work environment normally consists of five elements: (1) the employee belongs to a protected class; (2) the employee was subject to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment

complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 353 (5th Cir. 2001) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509–10 (5th Cir. 1999); *Jones v. Flagship Int'l*, 793 F.2d 714, 719–20 (5th Cir. 1986)). There is no dispute that Belgrave satisfies the first and third prongs of the analysis. SISD asserts that he cannot demonstrate that he was subjected to actionable conduct or that SISD failed to appropriately respond.

The burden on a plaintiff to demonstrate actionable conduct is high. "Title VII does not prohibit all verbal or physical harassment in the workplace," *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998), and is "only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996); *see also Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 924 (5th Cir. 1982) (holding that a Title VII violation may be found where the workplace is "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers"). "'[S]imple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges' that can survive summary judgment." *Turner v.*

*Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (quoting *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004)). The harassment must be "both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999). The existence of a hostile work environment is determined using "a totality-of-the- circumstances test that focuses on 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance.'" *Turner*, 476 F.3d at 347 (5th Cir. 2007) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). In this case, Belgrave has wholly failed to present evidence in support of a hostile work environment claim. His response to SISD's motion for summary judgment does not mention a hostile workplace claim, nor does it address the elements for bringing such a claim. To the extent Belgrave is relying on suggestions in his complaint that SISD should have done more in response to students' use of racial epithets and to the incident with the racially-charged note, the Court concludes that these isolated incidents do not rise to the level of actionable harassment.

The conduct at issue, while distasteful and distressing, does not constitute harassment as contemplated under Title VII. Belgrave must offer proof of severe or

pervasive conduct that can be characterized as "extreme." *Faragher v. City of Boca Raton*, 525 U.S. 775, 788 (1998). "The 'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment" to constitute actionable racial harassment. *Shepherd*, 169 F.3d at 874 (quoting *Harris*, 510 U.S. at 21); *see also Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005) (a few racial slurs from supervisors insufficient to create a hostile work environment); *Mosley v. Marion County*, 111 F. App'x 726, 728 (5th Cir. 2004) (three incidents involving racial slurs insufficient to support a hostile work environment claim).

Moreover, looking to the totality of the circumstances surrounding Belgrave's complaint, it is notable that Belgrave's job was to supervise disruptive junior high students with behavior problems. Although the Court in no way condones the students' conduct, dealing with such behavior was an expected part of Belgrave's job. *Cf. EEOC v. Nexion Health at Broadway, Inc.*, 199 F. App'x 351, 354 (5th Cir. 2006) (rejecting the plaintiff-nursing home employee's hostile work environment claim because the conduct complained of—the use of racial slurs—was occasioned by his elderly and often mentally impaired patients and noting that "[a]bsorbing occasional verbal abuse from such patients was not merely an inconvenience associated with his job; it was an important part of the job itself"); *cf. also Cain v. Blackwell*, 246 F.3d

758, 760 (5th Cir. 2001) (rejecting the plaintiff-home health care workers' hostile workplace claim because "[w]hile clearly crude, humiliating, and insensitive, the unique circumstances of the case makes the elderly and obviously impaired [patient's sexually inappropriate] commentary insufficient to establish sexual harassment" by the plaintiff's employer). Given these circumstances, the Court concludes that the complained-of behavior is insufficient, as a matter of law, to constitute actionable racial harassment.

However, even if the Court were to find these incidents sufficiently egregious to potentially create a hostile work environment, this claim fails. Because they were committed by third parties, SISD can only be held liable if it is shown that the "employer ratifie[d] or acquiesce[d] in the conduct by not taking immediate corrective action when it knew or should have known about the conduct." *Newsome v. Collin County Cmty. Coll. Dist.*, No.4:04CV265, 2005 U.S. Dist. LEXIS 34430 (E.D. Tex. July 18, 2005) (Bush, Mag.) (citing *Whitaker v. Carney*, 778 F.2d 216, 221 (5th Cir. 1985); *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 968 (9th Cir. 2002); *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238 (10th Cir. 2001); 29 C.F.R. § 1604.11(e)). In this case, Belgrave admits that the school took prompt disciplinary action against the students who used racial epithets against him.[29] With regard to the

[29] Exh. B: "Belgrave Deposition Transcript," at 47–53.

note, while Belgrave would have had school administrators interview the entire student body to determine the identity of the student who left the note on Belgrave's classroom door, SISD's failure to do so cannot be deemed actionable in light of the other steps the school took to address the situation, including notifying police and ordering security cameras for Belgrave's classroom. There is nothing in the record to suggest that SISD encouraged, contributed to, or was in anyway complicit in the racial animosity exhibited by some students. Accordingly, Belgrave has failed to demonstrate a genuine and material question of fact whether he was subjected to harassment that affected a term, condition, or privilege of employment, or whether his employer failed to take appropriate remedial action in response to the conduct cited. SISD is entitled to summary judgment on this claim.

**B. Equal Pay Act Claim**

Finally, Belgrave alleges that SISD violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), by paying his female predecessor, former SAC Aide Karen Kroeger, more than him. In order to establish a *prima facie* case under the EPA, Belgrave must show that: (1) his employer was subject to the Equal Pay Act; (2) he performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) he was paid less than an employee of the opposite sex providing the basis of comparison. *See* 29 U.S.C. § 206(d)(1); *Chance v. Rice University*, 984

F.2d 151, 153 (5th Cir. 1993). The parties do not dispute that SISD is subject to the EPA or that Belgrave and Kroeger held the same position under the same working conditions. Thus, the sole issue before the Court is whether Belgrave has established a question of genuine and material fact whether he was paid less than Kroeger.

Belgrave's evidence consists solely of his unsubstantiated statement: "Defense admits employees [sic] pay was unequal."[30] SISD has provided uncontroverted evidence that Belgrave was paid $14,114 as a SAC Aide while Kroeger was paid, during the previous school year, only $13,103.55 in the same position.[31] In light of this evidence, Belgrave's claim fails as a matter of law. SISD is entitled to summary judgment on this claim.

## IV. CONCLUSION

The Court is sympathetic to Belgrave's predicament. The Court recognizes that he undertook a difficult job and that the loss of employment works significant financial hardship. It is acknowledged that Belgrave appears convinced that his termination was due to his race. However, "a subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief." *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983); *see also Little*, 37 F.3d at 1075

---

30 Plaintiff's Response [Doc. # 29], at 3.

31 Defendant's Motion for Summary Judgment [Doc. # 28], Exhs. D-3, D-4.

("[T]he nonmovant cannot satisfy [his] burden [on summary judgment] with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."). Belgrave has provided no evidence that the SISD's decision to terminate him was impermissibly motivated by racially discriminatory animus, that SISD was seeking to retaliate against him for seeking relief from the EEOC, or that SISD created a hostile work environment. Belgrave has also failed to demonstrate any violations of the Equal Pay Act. It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 28] is **GRANTED** in its entirety. This case is **DISMISSED WITH PREJUDICE**.

SIGNED at Houston, Texas, this 29th day of **August, 2008**.

Nancy F. Atlas
United States District Judge